**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*E-Filed 05/13/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DISTRICT COUNCIL 16 NORTHERN
CALIFORNIA HEALTH AND WELFARE
FUND, its JOINT BOARD OF TRUSTEES,
and DOUG CHRISTOPHER as Trustee;

DISTRICT COUNCIL 16 NORTHERN
CALIFORNIA APPRENTICE &
JOURNEYMAN TRAINING TRUST
FUND, and DOUG CHRISTOPHER as
Trustee;

RESILIENT FLOOR COVERING
PENSION FUND, its BOARD OF
TRUSTEES, and STEVE HAVENS as
Trustee;

CENTRAL COAST COUNTIES FLOOR
COVERING INDUSTRY PENSION FUND,
its BOARD OF TRUSTEES, and STEVE
HAVENS as Trustee;

DISTRICT COUNCIL 16 of the
INTERNATIONAL UNION OF PAINTERS
AND ALLIED TRADES,

   Plaintiffs,
 v.

No. C 09-02069 RS

**ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT**

1  MORTENSEN'S CARPETS, INC., a
   California Corporation,

2

3              Defendant.
                                               /

4

5          Plaintiffs District Council 16 Northern California Health and Welfare Fund, its Joint Board

6  of Trustees, and District Council 16 Northern California Apprentice & Journeyman Training Trust

7  Fund, together with Doug Christopher as their Trustee; Resilient Floor Covering Pension Fund, its

8  Board of Trustees, Central Coast Counties Floor Covering Industry Pension Fund, and its Board of

9  Trustees, together with Steve Havens as their Trustee (collectively the "funds") ; and District

10 Council 16 of the International Union of Painters and Allied Trades (the "union") move for default

11 judgment, liquidated damages, attorney fees, and costs pursuant to Rule 55(b)(2) of the Federal

12 Rules of Civil Procedure.  Defendant Mortensen's Carpets, Inc., ("MCI") has not opposed the

13 motion.

14         On May 6, 2010, an evidentiary hearing was held in accordance with Rule 55(b)(2), at which

15 counsel for plaintiffs presented argument and evidence in favor of default judgment.  MCI did not

16 appear.  For the reasons presented below, the motion is granted.

17                           I.       BACKGROUND

18         On December 11, 2002, MCI entered into a collective bargaining agreement with the union,

19 which provided that MCI would make periodic contributions to the funds.  The same parties also

20 entered into two subsequent agreements, the most recent of which remains effective through June

21 30, 2011 (collectively, the "Agreements").   On May 12, 2009, the funds and the union filed a

22 complaint alleging that MCI had breached the Agreements by failing to make timely contributions

23 for work performed by its employees during October-December 2005; March-April 2006; June-

24 October 2006; November 2008; and March 2009.  Under the Agreements, such payments are

25 calculated based on the total hours each employee works, and they are due on the fifteenth day of

26 the month following the month in which the relevant labor was performed.  Late payment subjects

27 MCI to liability for liquidated damages, as well as attorney fees and costs.  A declaration filed with

28

No. C 09-02069 RS
ORDER

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   the instant motion indicates that, for the time periods stated in the complaint, MCI underpaid the

2   funds by a total of $25,824.97.  When combined with interest and liquidated damages, this number

3   climbs to $41,928.18.

4       The complaint also states that "Plaintiffs specifically reserve the right to conduct an audit of

5   Defendant's records pursuant to the terms of the Collective Bargaining Agreement and Trust

6   Agreements and to collect any additional amounts found to be due on audit, or otherwise."

7   Complaint at 5.  According to a declaration from Janet Dominguez, the audit referenced in the

8   complaint was submitted to plaintiffs on May 22, 2009, ten days after plaintiffs filed the instant

9   complaint.  The audit reports that MCI had substantially underreported the hours worked by its

10  employees; specifically, it reported only 541.50 out of 4,558.35 hours during the period January 1,

11  2005 through August 31, 2008.  Exh. A to Dominguez Decl.  As a result, according to the audit,

12  MCI underpaid the funds by more than $75,000. *Id.*  When this sum is added together with

13  liquidated damages and interest, the total amount due and owing climbs to $96,933.20. *Id.*  Beyond

14  the sentence mentioning the audit, quoted above, no mention of these additional delinquencies

15  appears in the complaint.

16      After MCI failed to respond to the complaint or make an appearance in the case, the Clerk of

17  Court entered default.  Plaintiffs now move for entry of default judgment against MCI pursuant to

18  contract law and Section 1132 of the Employee Retirement Income Security Act of 1974

19  ("ERISA"). *See* 29 U.S.C. § 1132(g)(2).  Plaintiffs seek $41,928.18, which represents MCI's

20  reported underpayments plus liquidated damages and interest for the time periods October-

21  December 2005; March-April 2006; June-October 2006; November 2008; and March 2009.  Based

22  on the results of the audit, they also seek unpaid contributions, plus interest and liquidated damages,

23  totaling $103,744.01.[1]  Finally, they seek the cost of conducting the audit, $3,931.54; attorney fees

24  through March 31, 2010, totaling $13,272.00; and the costs of suit through November 24, 2009,

25

26

---

27  [1] This sum represents the $96,933.20 calculated in the audit, plus additional interest that has accrued
    since the audit was conducted.

28

1   totaling $560.16.  *See* Cox Decl. (calculating damages); Dominguez Decl. (same); Williams Decl.

2   (calculating fees and costs).  The total requested recovery is $163,435.88.

3                                   II.      LEGAL STANDARD

4          Following entry of default, district courts are authorized to grant default judgment, so long

5   as the judgment does not "differ in kind from, or exceed in amount, what is demanded in the

6   pleadings."  Fed. R. Civ. P. 54(c); see also Fed. R. Civ. P. 55.  Entry of default judgment is within

7   the court's discretion, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), and is governed by the

8   following factors: (1) the merits of plaintiffs' substantive claim; (2) the sufficiency of the complaint;

9   (3) prejudice to plaintiffs; (4) the sum of money at stake; (5) potential disputes concerning material

10  facts; (6) whether default was due to excusable neglect; and (7) the Federal Rules of Civil

11  Procedure's strong policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-

12  72 (9th Cir. 1986).  In considering the *Eitel* factors, all factual allegations in plaintiffs' complaint are

13  taken as true, except for those relating to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

14  915, 917-18 (9th Cir. 1987).

15                                  IV.      DISCUSSION

16  A.      Damages Not Identified in the Complaint

17         A threshold question in this dispute is whether plaintiffs can claim damages for

18  delinquencies not specifically listed in their complaint.  Recovery pursuant to a motion for default

19  judgment, as noted above, must "not differ in kind from, or exceed in amount, what is demanded in

20  the pleadings."  Fed. R. Civ. P. 54(c).  The requested recovery described in the complaint differs

21  significantly from the recovery requested in the motion for default judgment:  plaintiffs' evidence

22  shows that MCI's reported underpayments, liquidated damages, and interest for the time periods

23  named in the complaint total $41,928.18.  The results of the post-complaint audit, however, would

24  almost triple this sum.

25         Here, plaintiffs' complaint reserves the right to conduct an audit but makes no specific

26  mention of the damages listed in the later-filed Dominguez Declaration.  Nonetheless, plaintiffs'

27  counsel has filed a supplemental declaration in which he represents that MCI was informed multiple

28

NO. C 09-02069 RS
ORDER

United States District Court
For the Northern District of California

1    times in writing and by telephone of the additional amounts uncovered by the audit.  As a result,

2    MCI has had sufficient notice of all claims for liability and would not be unduly prejudiced by the

3    entry of a default judgment that includes the additional amounts identified in the audit.

4    B.        *Eitel* Factors One and Two:  Merits of the Claim and Sufficiency of the Complaint

5            As to the merits of the motion for default judgment, each of the *Eitel* factors must be

6    considered in turn.  With regard to the first two factors, 29 U.S.C. § 1145 provides that every

7    employer who is obligated to make contributions under the terms of a collectively bargained

8    agreement shall make them in accordance with the terms of such agreement. When a benefit plan

9    wins a judgment in an action to enforce Section 1145, Section 1132 of the same title provides that

10   the plan is entitled to the unpaid contributions, interest thereon, reasonable attorney fees and costs,

11   and liquidated damages.  29 U.S.C. § 1132(g)(2).  Section 1132(g)(2)(C)(ii) is the liquidated

12   damages provision.  It applies when: (1) the fiduciary obtains a judgment in favor of the plan; (2)

13   unpaid contributions exist at the time of suit; and (3) the plan provides for liquidated damages.

14   *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d

15   212, 215 (9th Cir. 1989); *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1342 (9th Cir.

16   1988).  Once subsection (ii) is triggered, liquidated damages become mandatory.  *Idaho Plumbers*,

17   875 F.2d at 215.  In situations not expressly governed by Section 1132(g)(2), however, a plaintiff

18   may seek liquidated damages under applicable contractual provisions.  *Id.* at 217.

19           Here, all the *Idaho Plumbers* factors are satisfied.  The instant judgment satisfies the first

20   factor; and the allegedly unpaid contributions all existed at the time the complaint was filed in May

21   2009, so the second factor is also satisfied.  As to the final factor, the express terms of the

22   Agreements provide for liquidated damages.  *See* Williams Decl. (attaching relevant portions of the

23   Agreements).  Thus, 29 U.S.C. § 1132(g)(2), including its liquidated damages provision, is

24   applicable here, making likelihood of success on the merits relatively high.  Moreover, these

25   allegations are properly pled in the complaint.  Therefore the first two *Eitel* factors weigh in favor of

26   granting the motion for default judgment.

27   C.        *Eitel* Factor Three:  Prejudice to Plaintiffs

28

NO. C 09-02069 RS
ORDER

5

**United States District Court**
For the Northern District of California

1    As noted above, plaintiffs' claims against MCI for infringing the Agreements appear sound.

2 If the Court were to deny plaintiffs' motion for default judgment, plaintiffs would have no other

3 avenue for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

4 Consequently, the third *Eitel* factor, possible prejudice to plaintiffs, weighs in favor of granting

5 default judgment.

6    D.    *Eitel* Factor Four:  Sum of Money at Stake

7    The fourth *Eitel* factor concerns the amount of money at stake.  Default judgment is

8 disfavored when a large amount of money is involved or is unreasonable in light of the defendant's

9 actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at

10 *12 (N.D. Cal. May 29, 2007).  In determining if the amount at stake is reasonable, the court may

11 consider plaintiffs' declarations, calculations, pay stubs, and other documentation of damages.  *Id.*

12    1.    Unpaid and Underpaid Contributions, Liquidated Damages, and Interest

13    The amount of required contributions, as well as rates for liquidated damages and interest,

14 are set forth in the contract and appear beyond cavil.  Thus there can be no question these are

15 reasonable amounts.

16    2.    Attorney Fees, Audit Fees, and Costs of Suit

17    Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorney's fees

18 and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the

19 relief sought. 29 U.S.C. § 1132(g)(2)(D); *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258

20 (9th Cir. 1996).  Similarly, the Agreements provide that attorney fees are justified if a contribution is

21 not made.  Here, plaintiffs seek reimbursement for $13,272 in attorney fees, representing numerous

22 hours logged by three senior attorneys and a paralegal. *See* Williams Decl.  Plaintiffs' attorney

23 Blake E. Williams has submitted a declaration summarizing the tasks completed and indicating the

24 hours each professional spent on this case along with their hourly rates. *Id.*  While the submission

25 of itemized timesheets would have been ideal, nonetheless the attorney fee amounts appear

26 reasonable under the circumstances.  Further, the complaint alleged that an audit would be

27 conducted as part of the lawsuit, and the auditors have submitted a declaration in support of the

28

No. C 09-02069 RS
ORDER

**United States District Court**
For the Northern District of California

1    $3,931.54 expended thereon.  *See* Dominguez Decl.  This cost is well within the realm of the

2    ordinary.  As for costs of suit, plaintiffs seek $560.16.  *See* Williams Decl.  This amount, too, is

3    reasonable.

4              E.      *Eitel* Factor Five:  Possibility of a Dispute Concerning Material Facts

5              MCI has not filed an answer in response to plaintiffs' complaint, so no dispute concerning

6    material facts has arisen.  As the Clerk of Court has already entered default, the Court takes all well-

7    pleaded facts, except those pertaining to damages, as true.  *TeleVideo Systems*, 826 F.2d at 917-18.

8    Additionally, the evidence plaintiffs submitted in support of their motion for default judgment,

9    including the Agreement between plaintiffs and MCI, supports plaintiffs' account of the events.

10   Though there is a possibility of dispute as to the damages amount, there is little possibility of

11   dispute as to MCI's liability for damages.

12             F.      *Eitel* Factor Six:  Possibility of Excusable Neglect

13             There is also little possibility of excusable neglect.  MCI was duly served with the complaint

14   and summons.  Plaintiffs likewise sent MCI notice of default and informed it of the default

15   judgment hearing.  MCI, however, has made no appearance.

16             G.      *Eitel* Factor Seven:  Strong Policy Favoring Decisions on the Merits

17             Though default judgment is disfavored, and a case should be decided upon its merits

18   whenever reasonably possible, this preference for adjudication on the merits, standing alone, is not

19   dispositive.  *PepsiCo*, 238 F. Supp. 2d at 1177.  When MCI failed to appear or to submit an answer

20   to plaintiffs' complaint, a judgment on the merits became impractical, if not impossible.  *See Philip*

21   *Morris U.S.A., Inc. v. Castworld Prods, Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003).

22             H.      Summary

23             In light of the seven factors discussed above, the entry of default judgment against MCI is

24   appropriate for violations of ERISA and the Agreements' provisions.  Given MCI's failure to

25   litigate, plaintiffs have no other available remedy; nor is there any reason to suspect that plaintiffs'

26   evidence lacks trustworthiness.  Moreover, plaintiffs' claim for relief appears to be meritorious as

27   pled; and the amounts at stake, in terms of unpaid contributions, liquidated damages, interest,

28                                                                                                No. C 09-02069 RS
                                                                                                ORDER

**United States District Court**
For the Northern District of California

1 | attorney fees, audit fees, and costs, are not excessive given the allegations and the evidence

2 | presented.  Finally, the fact that default was not due to any excusable neglect on MCI's part weighs

3 | heavily in favor of granting default judgment.  Even though there is a strong policy favoring

4 | decisions on the merits, MCI failed to take any action which would further that prospect.  Default

5 | judgment, therefore, is appropriate.

6 | V.     CONCLUSION

7 | Accordingly, plaintiffs' motion for default judgment is granted.  A judgment is filed

8 | herewith.

9 |

10 | IT IS SO ORDERED.

11 |

12 | Dated: 05/13/2010

13 | RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 09-02069 RS
ORDER

8